IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| Kenneth N. Young, | ) | C/A No. 6:17-cv-01340-DCC |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **OPINION AND ORDER** |
| Columbia Farms, Inc., *a division of House of Raeford Farms, Inc.*, | ) | |
| Defendant. | ) | |

This matter comes before the Court on Defendant's Motion to Dismiss or in the Alternative for Summary Judgment. ECF No. 6. Plaintiff filed a Response in Opposition, and Defendant filed a Reply. ECF Nos. 13, 14. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Jacquelyn D. Austin for pre-trial proceedings and a Report and Recommendation ("Report"). On December 13, 2017, the Magistrate Judge issued a Report recommending that the Motion to Dismiss be granted in part and denied in part. ECF No. 25. Defendant filed objections to the Report. ECF No. 27.

**LEGAL STANDARD**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept,

1

reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

## **BACKGROUND**

Plaintiff filed this case in the Court of Common Pleas for the County of Greenville, South Carolina, alleging four causes of action: (1) race discrimination under 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) retaliation under Section 1981 and Title VII; (3) violation of the Age Discrimination in Employment Act ("ADEA"); and (4) Employment Retirement Income Security Act of 1974 ("ERISA") discrimination.[1] ECF No. 1-1. Plaintiff's Complaint alleges that he was employed by Defendant at a slaughter house and chicken processing plant in Greenville County, South Carolina. *Id.* at 2–3. Plaintiff, an African-American, was employed from February 13, 2013 to October 6, 2016. *Id.* at 3. Plaintiff alleges that his supervisors regularly greeted him in the mornings with phrases that included, "How ya doing, my Niggas?" *Id.* Plaintiff filed a complaint with the plant manager, and, while the supervisor stopped using the phrase, tension remained. *Id.* On or about September 30, 2016, Plaintiff was threatened by another employee

---

[1] The Magistrate Judge further broke these claims down into more discrete parts in the Report. ECF No. 25 at 3.

2

wielding a knife, and Plaintiff defended himself to avoid being stabbed. *Id.* Defendant suspended Plaintiff for three days and then immediately terminated his employment upon his return. *Id.* He was 61 years old at the time of his termination. *Id.*

Defendant filed a Notice of Removal. ECF No. 1. The Magistrate Judge provides a thorough recitation of the facts of this case and the relevant legal standards in her Report which the Court incorporates by reference. The Magistrate Judge recommends granting Defendant's Motion as to Plaintiff's Title VII claims[2] and denying Defendant's Motion as to the remainder of Plaintiff's claims. Defendant filed objections, seeking dismissal or summary judgment as to each of Plaintiff's claims.

## **DISCUSSION**

Defendant raises four objections. First, Defendant contends Plaintiff's allegations are insufficient to plausibly state a Section 1981 claim. Second, Defendant contends Plaintiff's allegations are insufficient to plausibly state an ADEA claim. Third, Defendant argues Plaintiff's ERISA claim should be dismissed. Finally, Defendant argues its alternative Motion for Summary Judgment should be granted. The Court addresses these in turn.

**I. Section 1981 Claims**

The Magistrate Judge construed Plaintiff's Complaint "as raising three separate discrimination claims[3] and two separate retaliation claims[4] under [Section] 1981." ECF No. 25 at 9. In light of that, the Report points out that Defendant's Motion only addresses Plaintiff's hostile work environment claim. *Id.* Although Defendant

---

[2] Plaintiff consented to dismissal of his Title VII claims. ECF No. 13 at 4.
[3] Discrimination based on: (1) a hostile work environment; (2) Plaintiff's suspension; and (3) Plaintiff's termination.
[4] Retaliation based on: (1) Plaintiff's suspension and (2) Plaintiff's termination.

3

addressed the remainder of Plaintiff's Section 1981 claims in its Reply, the Magistrate Judge declined to consider those arguments "because Defendant cannot first raise these arguments in a reply brief." *Id.* at n.3 (citing *Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 (4th Cir. 1996)). Defendant first contends that its Motion addressed *all* of Plaintiff's Section 1981 claims. The Court has reviewed Defendant's Motion and accompanying memorandum in support and agrees with the Magistrate Judge that the Motion only seeks dismissal of Plaintiff's hostile work environment claim. *See* ECF No. 6.

Turning to the hostile work environment claim, the Magistrate Judge recommends finding that Plaintiff properly and plausibly alleged the required elements of a hostile work environment claim: (1) harassment because of his race; (2) unwelcome harassment; (3) harassment that was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis for imputing liability to the employer. ECF No. 25 at 10 (citing *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007)). Specifically, the Report recited Plaintiff's allegation that he "was repeatedly referred to as a 'Nigga' by his supervisor until he filed a complaint with upper management. The relationship with his supervisor deteriorated from that time forward." *Id.*

Defendant contends that the Report misstates Plaintiff's allegations. Defendant points to a different paragraph of Plaintiff's Complaint, which states "Plaintiff's supervisors, Mr. Wilson and Mr. Santos, would regularly greet Plaintiff in the mornings with phrases that included, 'How ya doing, my Niggas?'" ECF No. 1-1. Defendant characterizes this as "a poor choice of words (plural) spoken generally by way of

4

greeting." ECF No. 27 at 4. Therefore, Defendant contends that Plaintiff's allegations do not plausibly allege harassment that was sufficiently severe or pervasive to create an abusive work environment. This objection is overruled.

First, the Report quotes directly from Paragraph 14 of Plaintiff's Complaint, in which Plaintiff alleges that he was repeatedly called a "Nigga" by his supervisors. *Id.* An allegation of the repeated use of such racially offensive language certainly is sufficient under the relevant motion to dismiss standard. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) ("Far more than a mere offensive utterance, the word nigger is pure anathema to African-Americans. 'Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as nigger by a supervisor in the presence of his subordinates.'" (quoting *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)) (internal quotation marks omitted)). Nonetheless, courts have also held that the *single* use of this word in a workplace environment can constitute a hostile work environment. For example, in *Ayissi-Etoh v. Fannie Mae*, the United States Court of Appeals for the District of Columbia Circuit reversed a grant of summary judgment for the defendant on a hostile work environment claim when a supervisor yelled, "Get out of my office nigger" after making a more generally derogatory statement about the plaintiff's potential as a "young black man." 712 F.3d 572, 577 (D.C. Cir. 2013). Judge Kavanaugh, concurring, noted:

> It may be difficult to fully catalogue the various verbal insults and epithets that by themselves could create a hostile work environment. And there may be close cases at the margins. But, in my view, being called the n-word by a supervisor—as [Plaintiff] alleges happened to him—suffices by itself to establish a racially hostile work environment. That epithet has been labeled, variously, a term that sums up . . . all the bitter years of

5

> insult and struggle in America, pure anathema to African-Americans, and probably the most offensive word in English. . . . No other word in the English language so powerfully or instantly calls to mind our country's long and brutal struggle to overcome racism and discrimination against African-Americans.

*Id.* at 580 (Kavanaugh, J., concurring) (internal quotations and citations omitted).

In sum, Defendant's characterization of Plaintiff's supervisor's use of an incredibly offensive word as a "poor choice of words" is both legally and factually indefensible,[5] and Plaintiff has pled a plausible claim for hostile work environment.

## II. ADEA Claim

In its Motion, Defendant seeks dismissal of Plaintiff's ADEA claim, contending Plaintiff "alleges no facts suggesting age discrimination." ECF No. 6 at 2. In the supporting memorandum, Defendant merely contends that Plaintiff's employment was terminated for a legitimate, nondiscriminatory reason. ECF No. 6-1 at 9. The Report noted, "[w]hether Plaintiff was terminated for a legitimate, nondiscriminatory reason, however, is not a matter for the Court to consider on a motion to dismiss." ECF No. 25 at 13. Now, changing positions, Defendant contends in its objections that Plaintiff's allegations are insufficient to plausibly state an ADEA claim, alleging Plaintiff's allegations about what he was told about the purpose of his termination were contradictory and that there are no facts supporting allegations of disparate treatment.

We find no such contradiction in Plaintiff's Complaint and hold Plaintiff's allegations are sufficient to plausibly state an ADEA claim. Plaintiff is a member of a protected class and alleges that he was terminated because of his age. *See* ECF No.

---

[5] Defendant also stated, "the misconduct alleged here—the use of racially insensitive words in a greeting—is simply too trivial to 'make a federal case' over . . . ." ECF No. 6-1 at 6. Numerous Circuit Courts disagree, as does this Court.

6

1-1 at 3 (noting that Plaintiff was 61 when he was terminated), 7 (stating that Defendant's explanation for Plaintiff's termination was because of his age and alleging "Plaintiff was treated in a disparate manner in relation to younger employees"). The Court holds that the factual allegations in Plaintiff's Complaint plausibly give rise to an ADEA claim. *See Gonzelez v. Carestream Health, Inc.*, 520 F. App'x 8, 10 (2d Cir. 2013) ("Gonzalez's complaint alleged that he is a 60-year old man with stellar performance evaluations, who was terminated for pretextual reasons. When combined with his allegation that Carestream maintained substantially younger workers, we find that no further amplification was necessary to state a plausible claim of age discrimination.").

### III. ERISA Claim

As to Plaintiff's ERISA discrimination claim, the Report recommends denying Defendant's Motion. Defendant objects, contending that Plaintiff failed to allege Defendant's specific intent to interfere with Plaintiff's pension rights. Yet, Defendant acknowledges as true the Report's finding that "Plaintiff's Complaint alleges that Plaintiff was 61 when he was terminated and that Defendant terminated him because of 'his impending eligibility for his pension.'" ECF No. 25 (quoting ECF No. 1-1 at 9); ECF No. 27 at 8. Defendant emphasizes the use of the word "because," arguing "[t]he 'because' betrays a conclusion: the real only facts are age and timing." ECF No. 27 at 8. Defendant's objection is unclear, as the word "because" clearly and plausibly alleges that Defendant took its adverse action against Plaintiff with the specific intent of depriving him of his pension. Therefore, Defendant's objection is overruled.

## IV. Summary Judgment

The Magistrate Judge declined to convert Defendant's Motion to Dismiss to one for summary judgment. ECF No. 25 n.2. The Report concluded that a motion for summary judgment is premature because this case is in its infancy and discovery has not yet been completed. Defendant objects, contending that Federal Rule of Civil Procedure 12(b)(6) <u>requires</u> the Court to evaluate a motion to dismiss that is accompanied by evidence outside of the complaint as a motion for summary judgment. ECF No. 8. The Court overrules Defendant's objection. As the Magistrate Judge properly noted, this case is, indeed, in its infancy. A scheduling order has not been entered and discovery is not yet complete. Therefore, as Plaintiff points out in his response, summary judgment is not proper at this time. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) ("[S]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.").

## **CONCLUSION**

For the foregoing reasons, the Defendant's Motion to Dismiss, ECF No. 6, is **GRANTED IN PART** and **DENIED IN PART** as set out in this Order. Specifically, Defendant's Motion is **GRANTED** as to Plaintiff's Title VII claims and **DENIED** as to the remainder of Plaintiff's claims.

IT IS SO ORDERED.

                                                                  s/ Donald C. Coggins, Jr.
                                                                   United States District Judge

September 5, 2018
Spartanburg, South Carolina